# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**CONNIE MARSHALL**                                                                                   **PLAINTIFF**

**v.**                                                                       **CIVIL ACTION NO. 3:05CV-458-R**

**F. DUANE ACKERMAN** *et al.*                                                                     **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff, Connie Marshall, filed a *pro se* complaint asserting various federal claims (DN 1). She also filed an application to proceed without prepayment of fees, which was granted by Order entered August 23, 2005 (DN 4). Because Plaintiff is proceeding *in forma pauperis*, the Court must *sua sponte* screen the complaint pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the instant action will be dismissed.

## I. BACKGROUND AND SUMMARY OF CLAIMS

As grounds for filing this case in federal court, Plaintiff lists the following: "violations of Federal Law, including Fourth Amendment, Title III, Freedom of Expression, Fraudulent Billing and other federal violations." To this end, she sues Bell South Communications Inc., and its CCO, F. Duane Ackerman. She seeks both damages and injunctive relief, including an end to the illegal wiretap she alleges was placed on her telephone, dissolution of bills for service, termination of all Bell South employees involved in the illegal practices described in her complaint, release of information concerning the wiretap placed on her telephone, and five million dollars for pain and suffering.

Plaintiff summarizes the factual basis for her claims in the statement of claim portion of her complaint as follows:

Since July 2004, Plaintiff has noticed an illegal wiretap on her tele[phone].  Bell South's "own" staff has also been aware of the illegal wiretap on her tele[phone].  The Plaintiff has had 2 computers, 4 telephones and a fax machine destroyed due to the illegal tap on her telephone.  This Plaintiff has continuously contacted Bell South Re: the problem with her tele[phone] service. . . .This Plaintiff has had 212 emails returned and her long distance calls illegally blocked, Bell South is now billing the Plaintiff for service that she did not have.

To her complaint, Plaintiff attaches an eighteen page "updated letter" to Cnythia Alford of the U.S. Department of Justice, Civil Rights Division, in Washington, D.C, which Plaintiff describes as a "log of events," and a number of other letters she wrote to Bell South.  The log and letters provide greater detail of the events about which she complains.[1]

Plaintiff begins the log:

**"I FEAR FOR MY LIFE."**  I am a victim of a hate crime and the people that should be assisting me appear to be covering up.  I am filing this complaint because I question the motives of the EEOC, the St. Mathews Police Depart., the County Attorney's Office, the FBI, and the Federal Attorney General's Office in Louisville, Kentucky, most recently, I have also been denied assistance by the Louisville Metro Police Department.  I also question the motives of one of the Special Prosecutors, Virginia Harrod.

Plaintiff states that in October 2003[2] she started working at Blue Grass Automotive's Lincoln Mercury dealership in Louisville, Kentucky and that it soon became clear to her "that they did not want [her] working there."  Because of problems, she filed an in-house complaint, but received no assistance from the CEO.  She then reports that on April 26, 2004,

I had my tape player sitting on my hard drive under my desk at work listening to my Tina Turner tapes, as I am a Tina Turner Impersonator and was listening to

---

[1]Plaintiff indicates that the information that is directly pertinent to the illegal wiretap claims starts on page four of the log.  However, pages one through three provide important background details necessary to fully understand Plaintiff's current claims.

[2]Plaintiff actually indicates that she began her new job in October 2004, but given the chronology of events, it appears that she meant 2003.

> the tapes to prepare for a Derby show, in which I was to perform on the Friday before the Derby. When I went to lunch, I pushed the wrong button and instead of turning the tape player off I inadvertently hit record. That evening when I arrived home I begin playing my Tina Turner tapes and on one of my tapes I could hear people talking about killing me (however the tape was not clear).

She reports taking the tape to have a copy made and enhanced. From the copy, Plaintiff claims that she could hear her co-workers talking about taking her "to the KKK and killing [her]." She claims that she gave a copy of the tape to the CEO of Blue Grass Automotive, but nothing was done.

The next incident occurred on May 21, 2004, when while sitting at her desk working, a substance was thrown on her twice. The substance made her skin itch and burn and hair fall out. Then on May 24, 2004, bugs were thrown in her hair, and on May 26, 2004, the unknown substance was thrown on her again.

Plaintiff received what she believes to be less-than-satisfactory responses from various state and federal officials and agencies that she contacted regarding the above-described incidents. Plaintiff contends that these officials and agencies are involved in a "corruption and cover-up" against her. According to Plaintiff, part of this corruption and cover up involves an illegal wiretap on her telephone and interference with her home computer, particularly her ability to send email.

Plaintiff reports that she first became aware of the wiretap on her telephone in July/August[3] 2004. At that time, Plaintiff had her phone service through Bell South. She claims that she has asked Bell South if her phone is tapped but contends that Bell South

---

[3] Plaintiff states in the body of her complaint that the she first became of the wiretap in July 2004, but in the log, attached as Exhibit 6, she states that her problems with her phone service began the following month, August 2004.

3

claims that it cannot give her this information. She reports that she is not a drug dealer, murderer or psychopath, and that she is "100% sure that this wiretap is related to the corruption and cover-up." She contends, "[t]here is no reason for the FBI, Police or anyone to tap my line."

A detailed and painstaking review of Plaintiff's complaint form, log, and other exhibits reveals that Plaintiff's apparent theory is that the FBI submitted "false claims" in order to obtain a court order allowing them to place a tap on Plaintiff's telephone and possibly also monitor and/or block her email and other computing activities, and presented this order to Bell South who then allowed the FBI to place a tap on Plaintiff's telephone.[4]

Plaintiff lists specific incidents, since July 2004, which she believes proves that her phone is tapped by the FBI.[5] According to Plaintiff,

> I have heard echos, clicks, and beeps and my line has at times been dead when I first pick it up. At times when I try to call out my telephone calls are rerouted and I am not reaching the offices that I am calling. I have had people on my line pretending to be the offices that I am calling and I recognize the same people's voices that are being used when my calls are rerouted. They have "cut off" my conversations with others and destroyed my fax machine. I also have several pages of Email that is returned undeliverable, particularly when I am trying to reach out of state media and out of state attorneys.

Plaintiff claims that she is often disconnected when she is attempting to call Washington, D.C., officials to report the corruption that is taking place in Louisville, Kentucky. She claims that various Bell South employees have also heard the noises on her line but cannot

---

[4] Plaintiff also believes that the local, state or federal authorities have placed some sort of a tracking device on her vehicle. Plaintiff explains that for about one to two months, "everytime I came out of my house and drove my car to go anywhere I would see a police car, therefore I also believe that my vehicle had an illegal tracking device on it. It did not matter what time a day or place."

[5] Plaintiff filed a separate federal lawsuit, which included claims against the FBI related to the alleged tap on her telephone on June 2, 2005. Those claims were dismissed by the Court by Order dated May 19, 2005. *Marshall v. Johnson et al.,* 3:05-CV-00261-CRS.

give her any information; rather, claims Plaintiff, Bell South states, "if it is federal we cannot get involved."

Plaintiff states that on May 6, 2005, at 8:30 a.m.:

> I called Bell South and spoke with Denise Harris-Craig and told her about the echo on the telephone. This name seems a bit suspicious due to the fact that I filed federal charges against the Director of the Louisville, Kentucky EEOC and her name is Maria Hall-Craig. The Louisville Federal Bureau of Investigation (FBI) and EEOC are located in the same building in Louisville, Kentucky and **the Louisville, Kentucky FBI are the people that are illegally tapping my telephone.**

On May 20, 2005, after enduring several months of problems with her telephone and email service and after making several unsuccessful reports to Bell South about these problems, Plaintiff decided to investigate the problem herself. Plaintiff tracked the lines inside and outside of her house and alleges that "they looked extremely strange" and that she could tell that "there were more lines than I needed."[6] Out of sheer frustration, Plaintiff decided to take matters into her own hands and "cut some of the lines." Plaintiff states that for a time her computer functioned better after she cut the lines. However, after a few days, she noticed a "high pitched signal coming through the computer" and then it stopped functioning correctly.

On or about May 26, 2005, it appears as if Plaintiff received a letter from Bell South representative, Joan Duncan, denying that any illegal wiretap was placed on Plaintiff's

---

[6]Plaintiff describes the appearance of the alleged wiretap as follows: "I noticed there was another line intertwined with mine (exhibit 13). I noticed that all of the other tenants lines were together and my line[s] were separately intertwined with another line. There was also tape, extra wires sticking out, some type of jelled matter, and plastic caps that the lines were run through. (Description of plastic caps: some with little square ends with an additional square end on one side of the plastic cap and some red round plastic caps (these are called bugs). (included in exhibit 13))."

telephone.[7]  Plaintiff, however, remained certain that Bell South had permitted the FBI to tap her telephone line.  On May 29, 2005, Plaintiff wrote a letter to Mr. Ackerman in which she stated that "I can assure you that a 'false claim' has been made to illegally tap my telephone," and among other things demanded to know "what lie was told to tap my telephone," be given the name of the judge that signed the order, and receive a copy of the order (DN 1, Ex. 4).

Eventually, Plaintiff decided to switch telephone service providers from Bell South to MCI.  Plaintiff alleges that MCI told her that it was taking them longer than usual to place her order because there had "been a block on her telephone number."  MCI suggested that Plaintiff change numbers, which she did.  After a few days, however, Plaintiff began experiencing some of the same problems she had with her Bell South service:  the phone was dead sometimes, she heard echos, her calls were disconnected, and she had difficulty placing certain calls.[8]  Plaintiff then decided to switch to a cellular telephone.

According to Plaintiff, the "evidence" she has amassed regarding the wiretap is irrefutable, and there is no doubt that the wiretap on her telephone is the product of the "huge circle of cover-up/corruption that encompasses all of[] the above and other offices" in Louisville, Kentucky.  Plaintiff states that this ordeal has caused her to "Fear for my life."  She further reports that she has had extreme aching all over her body and is having some type of mild seizures since the black powder has been thrown on her.  "In closing," writes Plaintiff, " when I asked the telephone company about the tap on my phone they state, 'they

---

[7]Plaintiff referred to, but did not attach, this letter to her May 29, 2005, letter to Defendants.  The May 29th letter is included as an exhibit to Plaintiff's complaint.

[8]She is suing only Bell South and its CCO in this action, not MCI.

cannot get involved when it is federal.' When I asked the police to take reports regarding my telephone they state, 'What do you expect us to do we can't get involved when it is federal.'"

## II. LEGAL STANDARD

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. 28 U.S.C. § 1915(e)(2); *McGore*,114 F.3d at 604-05. Upon review, this Court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A complaint may be dismissed as frivolous if it is premised on a nonexistent legal interest or delusional factual scenario. *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). In reviewing a complaint under this standard, the Court must accept all factual allegations contained in the complaint as true and must also construe the pleading in the light most favorable to Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## III. ANALYSIS

**A.    Federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq*.**

Title III of the Omnibus Crime Control and Safe Streets Act (referred to herein as the "Federal Wiretap Act") sets forth standards and procedures for the use of electronic surveillance, as well as criminal and civil penalties for the violation of the Act. Specifically, the Federal Wiretap Act provides for a civil cause of action under § 2520. *Lanier v. Bryant*, 332 F.3d 999, 1003 (6th Cir. 2003) (citing 18 U.S.C. § 2520). Thus, assuming that Plaintiff's

allegations are true, the Court must consider whether the facts as alleged could subject Bell South and its officers to civil liability under the Federal Wiretap Act.

Section 2520 of the Federal Wiretap Act states: "Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." Section 2511(2)(a)(ii) provides that:

> (ii) Notwithstanding any other law, providers of wire or electronic communication service, their officers, employees, and agents, landlords, custodians, or other persons, are authorized to provide information, facilities, or technical assistance to persons authorized by law to intercept wire, oral, or electronic communications or to conduct electronic surveillance, as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978 [50 USCS § 1801] if such provider, its officers, employees, or agents, landlord, custodian, or other specified person, has been provided with--
>
>     (A) a court order directing such assistance signed by the authorizing judge, or
>     (B) a certification in writing by a person specified in section 2518(7) of this title [18 USCS § 2518(7)] or the Attorney General of the United States that no warrant or court order is required by law, that all statutory requirements have been met, and that the specified assistance is required . . .

*Id.* This section is fatal to Plaintiff's claims against Bell South as alleged.

Plaintiff does not appear to be alleging that Bell South placed a wiretap on Plaintiff's telephone line on its own initiative.[9] Rather, Plaintiff alleges that because of her complaints

---

[9] Even if Plaintiff had made such an allegation against Defendants, it should be noted that 18 USCS § 2511(2)(a)(1) of the Federal Wiretap Act provides:

> It shall not be unlawful . . . for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

8

(both locally and to officials in Washington, D.C.) about the FBI's failure to properly investigate the threats made on her life and the harassment and assaults she suffered from her co-workers, the Louisville, Kentucky FBI office decided to tap her phone. Plaintiff further alleges that the FBI submitted "false claims" to a judge to obtain an order to permit the wiretap. Plaintiff alleges that as a result, Bell South permitted a wiretap to be placed on her telephone and that Bell South will not provide her with any information about the order (when it was issued, what judge signed it, etc.).

These facts do not state a cognizable claim against Bell South and its employees for a violation of the Federal Wiretap Act. Subsection 2511(2)(a)(ii) exempts Bell South from liability if, as Plaintiff alleges, it was presented with a order permitting the wiretap, regardless of whether the order was obtained in violation of the law. "No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, or agents, landlord, custodian, or other specified person for providing information, facilities, or assistance in accordance with the terms of a court order, statutory authorization, or certification under this chapter." *Id.*; *see also Camacho v. Autoridad de Telefonos*, 868 F.2d 482, 489-90 (1st Cir. 1989) (holding that telephone companies entitled to immunity under the Federal Wiretap Act when acting at the direction of federal officers); *Mfr. Int'l, Ltda v. Mfr. Hanover Trust Co.*, 792 F. Supp. 180, 192 (E.D.N.Y. 1992) (" No cause of action may be maintained against private actors where they are ordered by government authorities to intercept communications."). To hold otherwise would place service providers, like Bell South, and their employees in the precarious situation of risking potential liability for following what appear to be valid court orders.

In short, Bell South was not in a position to determine whether the FBI in Louisville,

Kentucky lied to a federal judge to obtain an order permitting the FBI to place a wiretap on Plaintiff's telephone and cannot be held liable for permitting the FBI to act in accordance with any such order. *Id.*

Furthermore, Plaintiff has not alleged any facts that would show that Bell South acted with bad faith and in concert with the FBI. Even considering Plaintiff's allegations in the light most favorable to Plaintiff, it does not appear that Bell South had any reason to doubt the propriety of any court order presented to it by the FBI at the time it allegedly allowed the wiretap to be placed on Plaintiff's telephone in July/August 2004. As such, any claims against Bell South under the facts alleged by Plaintiff cannot survive. *See* 18 U.S.C. § 2520(d) ("A good faith reliance on-- (1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization; (2) a request of an investigative or law enforcement officer under section 2518(7) of this title; or (3) a good faith determination that section 2511(3) or 2511(2)(i) of this title permitted the conduct complained of; is a complete defense against any civil or criminal action brought under this chapter or any other law.")

Likewise, Plaintiff has not alleged any cognizable claim under the Federal Wiretap Act based on Bell South's refusal to provide her with any information concerning the wiretap she alleges that the FBI had placed on her telephone. In fact, the Federal Wiretap Act expressly prohibited Bell South from releasing such information to Plaintiff notwithstanding Plaintiff's many oral and written requests for it to do so:

> No provider of wire or electronic communication service, officer, employee, or agent thereof, or landlord, custodian, or other specified person shall disclose the existence of any interception or surveillance or the device used to accomplish the interception or surveillance with respect to which the person has been furnished an order or certification under this subparagraph, except as may otherwise be required by legal process and then only after prior notification to the Attorney General or to the principal prosecuting attorney of a State or any political

>subdivision of a State, as may be appropriate. Any such disclosure, shall render such person liable for the civil damages provided for in section 2520.

*Id.* Thus, even if the FBI had placed a wiretap on Plaintiff's telephone as she alleges, Bell South was expressly prohibited from providing Plaintiff with any information related to it. In fact, Bell South could have subjected itself to liability had it complied with Plaintiff's requests. As such, Plaintiff cannot maintain a cause of action against Bell South for following the law.

Accordingly, for the reasons explained above, Plaintiff's Federal Wiretap Act claims against Bell South and its CCO, Mr. Ackerman, will be dismissed with prejudice for failure to state a claim.

**B.    First Amendment Freedom of Expression, Fourth Amendment Search and Seizure, and "Other Federal Law" Claims**

A plaintiff may file suit in federal court arising from a violation of plaintiff's constitutional rights by persons acting under the *color of federal law*. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395 (1971). A *Bivens* action is considered the federal counterpart of a § 1983 action. *Shannon v. Gen. Elec. Co.*, 812 F. Supp. 308, 322 (N.D.N.Y. 1993).

Plaintiff's First and Fourth Amendment claims against BellSouth and its CCO arise out of the same set of facts described above. The Court notes that Plaintiff has failed to allege that either Bell South or its CCO were acting under color of federal law and the Court is doubtful that Plaintiff would ever be able to prove this indispensable element under the facts alleged. Nevertheless, the Court need not resolve this issue. Even if the Court were to presume that Bell South and its CCO were engaged in state action when they allowed the FBI to place a wiretap on Plaintiff's telephone, the Federal Wiretap Act exempts them from any liability under the facts as alleged by Plaintiff. *See* 18 U.S.C. § 2520 (d) ("A good faith reliance on-- (1) a court warrant or

order, a grand jury subpoena, a legislative authorization, or a statutory authorization . . . **is a complete defense against any civil or criminal action brought under this chapter or <u>any other law</u>**.") (emphasis added); *see also In re Appl. of U.S. for Order Author. Inter. of Oral Commc'n*, 545 F. Supp. 1271, 1274 (D.P.R. 1982) ("Moreover, we are aware that 18 U.S.C. 2520 provides that a good faith reliance on a court order shall constitute a complete defense to any civil or criminal action brought under 18 U.S.C. 2510, et seq., or under any other law.").

Once again, Plaintiff does not allege that Bell South acted in concert with the FBI to assist the FBI in obtaining a fraudulent order or that Bell South had any reason to doubt that any ordered presented to it by the FBI was the product of any fraud or false claims. As such, Plaintiff cannot maintain a claim against Bell South under the facts alleged for the violation of **any law**, which includes her First and Fourth Amendment claims as well as her undefined "other federal law" claims. Accordingly, the Court will also dismiss these claims with prejudice.

**C.     Fraudulent Billing Claims**

Plaintiff also alleges a state law fraudulent billing/breach of contract claim against Defendants. She alleges in vague and conclusory terms that Defendants billed her for services she did not receive. However, neither her complaint form, log, nor attached letters explain what services were allegedly erroneously billed to Plaintiff's account or the dates when such billings allegedly occurred.

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* While Rule 8 does not require a plaintiff to plead a claim with excruciating detail, a complaint must be sufficiently detailed to place the defendant on fair notice of the claims asserted against him. *See Jones v. Duncan*, 840 F.2d 359, 361 (6th Cir. 1988). Here, after a review of all of the documentation

provided by Plaintiff, the Court concludes that Plaintiff has failed to allege her fraudulent billing claims with sufficient specificity to survive initial review and/or fails to demonstrate their applicability to any of the facts alleged. She merely makes broad and conclusory allegations that fail to place Defendants on notice as to the claims against them. Consequently, Plaintiff's fraudulent billing claims must also be dismissed. These claims, however, will be dismissed without prejudice, and Plaintiff may attempt to re-file them at a later date should she be able to provide sufficient detail to put Defendants on notice of what services were allegedly wrongfully billed to Plaintiff's account.

The Court will enter a separate Order consistent with this memorandum opinion.

Date:

cc: Plaintiff, *pro se*

4413.008